## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**AUDRY REGNAL BLACKLEDGE**                                  **PLAINTIFF**

**v.**                                  **CIVIL ACTION NO. 2:24-cv-136-TBM-RPM**

**CITY OF HATTIESBURG;**
**STEVEN ADAMSON; ANNA**
**RUSH; ELIZABETH PORTER;**
*and* **CHIEF HARDY SIMS**                                  **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

The City of Hattiesburg contracted with a private company, IntelliSafe, to assist with the implementation of a new traffic enforcement system for school zones. Under this system, Hattiesburg police officers use radar to monitor traffic in school zones. But rather than initiating a traffic stop, officers use a hand-held recording device, provided by IntelliSafe, to photograph the vehicle's license plate. Once the police officer issues a traffic ticket, it is forwarded to IntelliSafe, who mails it to the registered owner of the vehicle—rather than the driver. IntelliSafe is then responsible for processing the tickets, unless a person desires a hearing in municipal court.

As a result of this system, Plaintiff Audry Blackledge, a practicing attorney and former municipal court judge, received a traffic ticket in the mail after a vehicle registered to him was recorded traveling at a speed of 28 miles per hour in a 15 mile-per-hour school zone. Blackledge argues that he was not driving the vehicle though. And he says IntelliSafe threatened him with a late fee if he challenged the ticket in court. According to Blackledge, this violated his right to be presumed innocent, and he seeks declaratory and injunctive relief for violations of his rights to equal protection and due process under the law.

It is true that the roll out of the IntelliSafe system was a bit of a mess. But the undisputed facts do not show a constitutional violation. To be sure, soon after Blackledge filed this lawsuit and told the City attorney that he was not driving the vehicle, the City confirmed that the traffic ticket was closed by IntelliSafe. In fact, the City made sure that the ticket would never be filed at all in municipal court. So Blackledge is not guilty of anything. And he owes no fine or late fee.

This undercuts his initial argument that IntelliSafe presumed him to be guilty and required a late fee be assessed prior to any hearing. Similarly, while Blackledge does not need a municipal court hearing since there is no traffic ticket to contest, he now recognizes that he would have eventually obtained a hearing and would have been presumed innocent by the municipal court judge at that hearing. Indeed, this is exactly what happened to thirty-four other individuals who had the same defense as Blackledge, *i.e.*, not being the driver. Those thirty-four people received a hearing in front of a municipal court judge, were presumed to be innocent at the hearing, and ultimately prevailed at the hearing as their tickets were all dismissed. For the reasons set forth below, the Defendants' Motion to Dismiss [10] is converted to a motion for summary judgment, the Motion is granted, and Blackledge's claims are dismissed with prejudice.

## I. BACKGROUND

On the afternoon of May 17, 2024, at approximately 3:08 p.m., a Hattiesburg police officer recorded a Nissan Rouge traveling at a speed of 28 miles per hour in a 15 mile-per-hour school zone. No traffic stop was conducted, and the driver was not identified. Instead, the officer used a hand-held speed camera to photograph the vehicle's license plate and issued a traffic ticket to Audry Blackledge, the registered owner of the vehicle. The traffic ticket was then sent to Blackledge via U.S. Mail. The traffic ticket contained an affidavit from the officer swearing, "under oath, that the

individual named in the citation, 'while operating the aforementioned motor vehicle, did willfully and unlawfully commit the offense of speeding.'" [13], p. 8. The ticket also identified the available "options to address th[e] citation." [1-4], p. 2. The first option was to enroll in a "diversion program," the second option was to contest the ticket and appear in court, and the third option was to pay the ticket in full, which would result in the ticket appearing on Blackledge's driving record. [1], pps. 2, 6.

The "diversion program" was implemented in March of 2024 after the Hattiesburg City Council and Hattiesburg Mayor Toby Barker signed a contract with IntelliSafe, with the assistance of MetaTraffic, to provide the Hattiesburg Police Department with services and equipment to implement a new traffic enforcement system in school zones. *Id.* at pps. 5, 6. Under this contract, IntelliSafe processes the traffic tickets and mails the tickets to the vehicle's registered owner. Through this process, IntelliSafe encourages the vehicle owners to pay a preliminary fine and enroll in a "diversion program," which is "designed, implemented, and operated by IntelliSafe with the assistance of MetaTraffic." *Id.* at p. 6. Participation in the "diversion program" requires payment of a $230.00 fine and is deemed an admission of guilt. *Id.* By participating in the "diversion program," however, the traffic ticket is not entered into the court system for disposition and is disposed of without being reported on the vehicle owner's driving record. *Id.*

Rather than participating in the "diversion program," Blackledge chose the second option—to contest the ticket. *Id.* at p. 2. He followed IntelliSafe's procedure to contest the ticket by calling "the Support Center . . . and select[ing] the number choice for Hearing Date." [1-6]; *accord* [1-4], p. 2. But he was unsuccessful in getting a hearing and received a notice informing him

that if he does "not pay or schedule a hearing date by 06/27/2024, a late fee of $30.00 will be added and you will lose your right to a hearing." [1-6].

After not being able to schedule a hearing, Blackledge appeared at the municipal court on July 8, 2024, the date identified on the ticket. [1], pps. 14-15. At that time, he was approached by IntelliSafe personnel and informed them that he intended to plead "not guilty" because he was "not driving the vehicle at that time" and "was not in the City of Hattiesburg, or even in Forrest County, Mississippi." [1], p. 2.[1] According to Blackledge, the IntelliSafe personnel advised him that "he was foregoing the opportunity to avail himself of the diversion program and that the judge 'would not be so lenient.'" *Id.* Blackledge again refused to enter into the "diversion program" and "opted to contest the citation before the City of Hattiesburg Municipal Court." *Id.* Despite repeated attempts to schedule a hearing with the court directly, however, Blackledge asserts that he was unable to do so. *Id.* Blackledge then filed this action on August 29, 2024, alleging violations of his rights to due process and equal protection.

Notably, on October 2, 2024, thirty-four other individuals, who had also requested a hearing to contest similar traffic tickets, appeared before the municipal court. [13-5], pps. 1-2, 5-6, 9-10. And "after review[ing] the evidence" and "consulting with an Officer," the city prosecutor agreed to dismiss all of the citations because the City, presuming each challengers' innocence, could not identify the driver at the time of the violation. *Id.* Similarly, on October 11, 2024, Blackledge was notified that, based on his representations that he was not driving the subject vehicle, the traffic

---

[1] In his Complaint, Blackledge says that he did not follow IntelliSafe's then procedure to inform it that he was not driving the vehicle, as it required him to "transfer the liability to another" by "filling out a form and identifying another as guilty of the offense." *Id.* at p. 12. Blackledge objects to the process arguing that "private citizens are not responsible for performing functions of the government, rather, it is the government's responsibility to prove guilt and to positively identify the driver prior to making false accusations, under oath." *Id.*

ticket was considered closed in IntelliSafe's internal system. [11-1]. The Defendants have moved to dismiss. [10].

## II. CONVERSION TO SUMMARY JUDGMENT

"[W]hen 'matters outside the pleading' are presented with a motion to dismiss under Rule 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchize, LLC.*, 255 F. App'x 775, 783 (5th Cir. 2007) (quoting *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 (5th Cir. 1988)). "Indeed, a district court is empowered to enter summary judgment sua sponte." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Upon doing so, "[t]he only requirement is that the non-moving party have at least ten days in which to submit its own evidence. This period begins running when the non-movant is first put on notice that, based on its acceptance of evidence outside the pleadings, the court could convert the Rule 12(b)(6) motion into a summary judgment." *Holguin v. U.S. Dept. of Army*, 98 F.3d 1337, 1996 WL 556767, at *2 (5th Cir. Sep. 5, 1996).

In support of their Motion to Dismiss, the Defendants attached a letter from Hattiesburg City Prosecutor Steven Adamson to Blackledge notifying him that the traffic ticket was closed. [11-1].[2] And in response to the Motion to Dismiss, Blackledge attached seven exhibits, including affidavits. [13-1, 2, 3, 4, 5, 6, 7]. Since both parties submitted evidence outside the pleadings for this

---

[2] While courts may "consider documents attached to the Complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice in the Rule 12 analysis without converting the motion to a Rule 56 motion," this letter is not public record. *Brown v. Talavera*, No. 25-cv-1199-DPC, 2025 WL 2899482, at *2 (E.D. La. Oct. 10, 2025); *accord Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating that courts may consider "matters of which a court may take judicial notice" when reviewing a motion to dismiss under Rule 12(b)(6)). Instead, since no case was ever opened in the municipal court, this letter was not filed on the docket but rather was privately sent to Blackledge. Private letters are not public record. So for the Court to consider its contents, which the Defendants clearly intended this Court to do by attaching it as an exhibit, the 12(b)(6) motion must be converted into one for summary judgment.

Court's consideration and Blackledge also advised at oral argument that he had no objection to the conversion of the Motion to Dismiss into one for summary judgment,[3] this Court will sua sponte convert the 12(b)(6) motion into a motion for summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). It is the burden of the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there is a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

"A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

It is not permissible to make credibility determinations or weigh the evidence at the summary judgment stage. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club,*

---

[3] At oral argument, the Defendants advised that if their 12(b)(6) Motion was denied, they would need limited discovery as to damages only, such as a few interrogatories, requests for production, and Blackledge's deposition. For his part, Blackledge stated that no additional discovery was necessary.

*Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). Yet, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted).

## III. SUBJECT MATTER JURISDICTION

Rather than challenging the citation itself, Blackledge asserts claims for "violations of [his] constitutional rights as a result of the policy promulgated, enacted, and/or enforced by, or on behalf of, the City of Hattiesburg regarding the enforcement of its traffic rules. [S]pecifically . . . his rights to equal protection under the law and due process." [13], p. 2. As a result, Blackledge seeks declaratory relief that "the scheme implemented and operated by the Defendants and Private Entities, as applied to [Blackledge] and others similarly situated, violates the Due Process and Equal Protection Clauses." [1], p. 21. He also seeks declaratory relief that "the contract entered into between the City of Hattiesburg and the Private Entities . . . is void as it violates the Due Process and Equal Protection Clauses." *Id.* Finally, Blackledge seeks an "injunction which preliminarily and permanently enjoins the Defendants and the Private Entities from enforcing city traffic ordinances by and through the scheme described." *Id.* Blackledge does not seek damages.

The Defendants first argue that Blackledge's claims must be dismissed for lack of subject matter jurisdiction because he has not alleged an injury sufficient to confer standing to assert his claims. The Court disagrees.

### A. Article III case or controversy requirement

"Article III of the United States Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Crane v. Johnson*, 738 F.3d 244, 251 (5th Cir. 2015) (citing U.S.

7

Const. art. III, § 2). The judicial doctrines of standing, ripeness, and mootness have evolved from this constitutional restriction. *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002). "In order to have standing to assert federal jurisdiction, a plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424 (5th Cir. 2013) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)). "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021).

"Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F. App'x 336, 339 (5th Cir. 2018) (citations and internal quotations omitted). Finally, "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)).

**B. Standing**

To begin, "a plaintiff must have standing for each claim asserted and for each form of relief sought, particularly when a plaintiff asserts multiple claims or seeks multiple forms of relief." *Teche Vermilion Sugar Cane Growers Ass'n. Inc. v. Su*, 749 F. Supp. 697, 711 (W.D. La. 2024) (collecting cases). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that

the injury 'will be redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Thus, if a plaintiff has not suffered an injury caused by the defendant that the court can remedy, "there is no case or controversy for a federal court to resolve." *TransUnion LLC*, 594 U.S. at 423 (quotation omitted).

Here, Blackledge seeks declaratory and injunctive relief to remedy the alleged constitutional violations he suffered. "Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). To demonstrate that a case or controversy meets the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts establishing "actual present harm or a significant possibility of future harm." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 1665, 75 L. Ed. 2d 675 (1983); *see Serafine v. Crump*, 800 F. App'x 234, 236 (5th Cir. 2020) (per curiam) (observing that although *Lyons* addressed injunctive relief, its "reasoning applies equally to declaratory relief").

Blackledge filed his Complaint on August 29, 2024, arising out of the May 17, 2024, alleged speeding violation. At that time, it is undisputed that the traffic ticket was still pending, that Blackledge refused to pay any fine or late fees, that he had not received a hearing even though he wanted one, and—according to IntelliSafe—that Blackledge was responsible. In fact, the traffic ticket was not closed until October 11, 2024. Accordingly, Blackledge alleged an "actual present

harm" at the time he filed this action. *Kilper v. City of Arnold, Mo.*, No. 4:08-cv-267-TCM, 2009 WL 2208404, at *10 (E.D. Mo. Jul. 23, 2009) (collecting cases).[4]

**C. Mootness**

There are new facts to consider after the Complaint was filed though. Since it is now undisputed that Blackledge would have been presumed innocent at any hearing, and that his traffic ticket was closed after this lawsuit was filed without the need for a hearing, the Court must determine whether his requests for declaratory and injunctive relief are moot. Although Blackledge specifically raises mootness in his response, the City declined to address it in its reply. [13], p. 13. "The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)). This case-or-controversy requirement persists "through all stages of federal judicial proceedings." *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013). Thus, "[i]f an intervening event renders the court unable to grant the litigant 'any effectual relief whatever,' the case is moot." *Dierlam*, 977 F.3d at 476 (quoting *Calderon v. Moore*, 518 U.S. 149, 150, 116 S. Ct. 2066, 135 L. Ed. 2d 453 (1996)). But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012) (internal quotations and citation omitted).

---

[4] In *Mallory v. City of Hattiesburg*, 2:25-cv-10-KS-BWR, slip op. [28] at 11-13 (S.D. Miss. Oct. 14, 2025), Judge Starrett found a lack of standing where the plaintiff paid the fine and never alleged he was not driving. Blackledge presents different undisputed facts.

"When conducting a mootness analysis, a court must not 'confuse[] mootness with the merits.'" *Dierlam*, 977 F.3d at 477 (quoting *Chafin*, 568 U.S. at 174). A court "need only ask whether the plaintiff's requested relief is 'so implausible that it may be disregarded on the question of jurisdiction[,]'" leaving for later "to decide whether [the plaintiff] is in fact entitled to the relief he seeks." *Id.* (quoting *Chafin*, 568 U.S. at 177). Because mootness turns on each form of relief requested, this Court considers Blackledge's requests for declaratory relief and injunctive relief separately. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("A suit may become moot only as to a particular form of relief."); *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) ("[I]t is possible for a 'live' controversy to remain where some but not all issues in a case have become moot.") (citation omitted).

### i. Declaratory relief

Blackledge seeks two forms of declaratory relief: (1) that "the scheme implemented and operated by the Defendants and the Private Entities . . . violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments;" and (2) "that the contract entered into between the City of Hattiesburg and the Private Entities . . . is void as it violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments . . . because it violates public policy." [1], p. 21. Yet a "federal court may not issue a declaratory judgment unless there exists 'an actual controversy.'" *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (citation omitted). As discussed above, even though Blackledge would have eventually received a hearing, Blackledge's traffic ticket was closed before a hearing was ever had. And with it went any harm that was present when Blackledge filed this suit. *See Boger v. City of Harrisonburg, Va.*, No. 5:24-cv-00083, 2025 WL 1696562, at *7 (W.D. Va. June 17, 2025) (*Boger II*) (denying declaratory

relief and holding that the plaintiff did "not face any ongoing harm of prosecution" because the city voluntarily dismissed his speed camera violation).

Accordingly, the Court's mootness inquiry turns on whether Blackledge faces a "significant possibility" of encountering the challenged conduct again in the near future. *See Bauer*, 341 F.3d at 357. The Supreme Court has "repeatedly reiterated that the "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (alterations and emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)). "'[A]llegations of *possible* future injury' are not sufficient." *Id.* (emphasis in original). Nor are "general assertions or inferences that in the course of their activities, [the plaintiff] will be prosecuted for violating valid criminal laws." *O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). The Court assumes that plaintiffs will "conduct their activities within the law." *Id.*

For example, in *Boger v. City of Harrisonburg, Va.*, (*Boger I*), the court held that the plaintiff did not "face the imminent threat of another speed camera violation based on his co-ownership of the vehicle" despite the city's continuing operation of the traffic program. No. 5:24-cv-00083, 2024 WL 5058013, at *3-4 (W.D. Va. Dec. 10, 2024). It reasoned that the injury was contingent on many factors: "Boger would suffer the injury only if (1) a speed camera captured the same vehicle (or another vehicle he owned) speeding; (2) Boger was not driving the vehicle at the time; and (3) the City . . . chose to ticket Boger for the speeding violation solely based on his ownership of the vehicle . . . ." *Id.* at 4. Moreover, the court emphasized, "[t]he fact that Boger's alleged future injury is

contingent on unlawful conduct—speeding—only reinforces this conclusion." *Id.*[5] Here, Blackledge faces the same hurdles as Boger. Before facing the challenged conduct again, an IntelliSafe camera would need to capture another person speed through a school zone in Blackledge's car. Absent a "sufficient likelihood that he will again be wronged in a similar way," Blackledge "is no more entitled to an injunction than any other citizen" of Hattiesburg. *See Lyons*, 461 U.S. at 111.

So even if this Court were to issue the declaratory judgments requested, they would have no practical effect or provide any meaningful relief. *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 397 (5th Cir. 2000) (finding the request for declaratory relief moot because "[g]ranting this relief would not affect the rights of the parties); *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460, 469 (5th Cir. 2020) (holding a claim is moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party"). Indeed, such relief would serve merely as "a retrospective opinion that the plaintiff was wrongly harmed by the defendant." *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019) (internal brackets and citation omitted). And "[a] claim for declaratory relief that does not 'settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff' is moot." *Prison Legal News*, 944 F.3d at 880 (citations omitted). Because Blackledge no longer suffers a redressable "actual injury" as required by Article III, Blackledge's requests for declaratory relief are moot, unless an exception applies. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990); *Bayou Liberty Ass'n, Inc.*, 217 F.3d at 397.

---

[5] The court did recognize that Boger's alleged risk of injury did technically turn on another person's violation of the law. *See id.* Nevertheless, it maintained that it could not "diagnose a future injury as 'imminent' based on a conclusory assumption that others will violate Virginia traffic laws when driving vehicles Boger owns." *Id.*

### ii. Injunctive relief

Blackledge also seeks "an injunction which preliminarily and permanently enjoins the Defendants and the Private Entities from enforcing city traffic ordinances by and through the scheme described herein above." [1], p. 21. But, again, Blackledge's traffic ticket was closed based on his representations that he was not driving the subject vehicle, and he does not face an imminent threat of receiving another ticket. And "[a] case—or a claim for injunctive relief—is moot (and therefore no longer a case or controversy for Article III purposes) when the issues it presents are no longer 'live' or when the parties no longer possess a 'legally cognizable interest in the outcome.'" *Council on American-Islamic Relations—Minnesota v. Atlas Aegis, LLC*, 497 F. Supp. 3d 371, 376 (D. Minn. 2020) (quoting *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013) (internal quotation omitted)). For the same reasons discussed above, "[n]o order of this Court could affect the parties' rights with respect to the injunction [this Court is] called upon to review." *Honig v. Students of Cal. Sch. for the Blind*, 471 U.S. 148, 149, 105 S. Ct. 1820, 85 L. Ed. 2d 114 (1985). Accordingly, Blackledge's claim for injunctive relief is moot, unless an exception applies.

### iii. Exceptions to mootness

The mootness analysis, however, does not end here because under the voluntary cessation doctrine, "a defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 284-86 (5th Cir. 2012) (concluding that a city's repeal of an ordinance the night before oral argument did not moot the plaintiff's challenges to the ordinance). "If that is all it took to moot a case, 'a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he

left off, repeating this cycle until he achieves all his unlawful ends.'" *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (quoting *Nike*, 568 U.S. at 91).

"In general, a defendant's voluntary conduct moots a case only if 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (citation omitted); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). Although the Supreme Court has held that the standard for determining whether a defendant's voluntary cessation is "stringent," this "heavy burden" applies to private defendants rather than government entities. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

Government entities bear a "'a lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Freedom From Religion Found., Inc.*, 58 F.4th at 833. This is because the Court presumes that "state actors, as public representatives, act in good faith." *Id.* (citations omitted). But this presumption of good-faith cessation is defeated when: (1) there is no controlling statement of future intention; (2) the timing of the change is suspiciously timed; and (3) the government continues to defend the challenged behavior. *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1089-90 (5th Cir. 2023); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019)). The City of Hattiesburg fails to meet its burden at each step.

To begin, there is no controlling statement of future intention offered via affidavit or other sworn testimony. *See Sossamon*, 560 F.3d at 325; *Fenves*, 979 F.3d at 328. And "absent a formal announcement, a government defendant's voluntary cessation of possibly wrongful conduct is not presumed to be done in good faith." *Nelson v. Landry*, 714 F. Supp. 3d 790, 805 (M.D. La. 2024) (explaining that with no formal announcement, "there is no presumption of good faith to overcome."). Indeed, Hattiesburg is still operating its traffic enforcement system for school zones with IntelliSafe. The City of Hattiesburg, therefore, fails to meet its burden in proving this case is moot. *See In re Bright Ideas Co., Inc.,* 284 A.3d 1037, 1043 (D.C. 2022) (holding defendant did not meet its burden because it "never represented in its pleadings . . . that it ha[d] undertaken some formal (or even informal) change in its traffic enforcement practices").

Even if the City of Hattiesburg had met its burden at the first step, it would still fail upon consideration of the timing of when Blackledge's traffic ticket was closed. As discussed above, a Nissan Rouge was observed speeding in a school zone on May 17, 2024, and a traffic ticket was mailed to Blackledge, the registered owner of the vehicle. After attempting to contest the ticket, to no avail, Blackledge filed his Complaint on August 29, 2024. Six weeks later, on October 11, 2024, Blackledge was informed that his traffic ticket was closed. At oral argument, the City explained that once it learned Blackledge said that he was not the driver, then it made the decision to make sure that the ticket was never filed with the municipal court at all and was closed in the IntelliSafe system. As a result, while that may have been understandable, the Court still finds that the dismissal of Blackledge's ticket "raises suspicions" that its cessation was in response to this litigation. *Schilssel*, 939 F.3d at 769 (finding that defendant's voluntary cessation did not moot a case); *Knox v. SEIU*, 567 U.S. 298, 307, 132 S. Ct. 2277, 2287, 183 L.Ed.2d 281 (2012) ("[M]aneuvers designed

to insulate a decision from review by this Court must be viewed with a critical eye."). So the City of Hattiesburg also fails to meet its burden in proving mootness at this step.

Finally, "[a]lthough not dispositive, the Supreme Court has found whether the government 'vigorously defends the constitutionality of its . . . program' important to the mootness inquiry." *Schlissel*, 939 F.3d at 770 (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007)). Here, the Defendants argue that "Blackledge was afforded even greater process by being allowed to submit documentation, prior to formal proceedings, to prove that he was not the driver of the subject vehicle. He failed to utilize such a process." [14], p. 2. And that "Blackledge has not cited one analogous case that has found a constitutional deprivation form receiving a traffic ticket in the mail." *Id*. Such arguments "constitute a defense of its practices." *Schlissel*, 939 F.3d at 770; *Fenves*, 979 F.3d at 328; *Louisiana v. U.S. Env't Prot. Agency*, 712 F. Supp. 3d 820, 847 (W.D. La. 2024) (applying the voluntary cessation doctrine and finding that the "EPA continues to vehemently defend its position regarding the challenged mandates."). The City of Hattiesburg fails to meet its burden at this step as well.

For these reasons, the City of Hattiesburg has not put forth sufficient evidence to satisfy its burden to show that its voluntary cessation makes it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. Therefore, Blackledge's claims for declaratory and injunctive relief are saved from a finding of mootness.

## IV. *MONELL* LIABILITY

In his Complaint, Blackledge asserts claims under Section 1983 against the City of Hattiesburg and Police Chief Hardy Sims alleging violations of the Equal Protection Clause of the

Fourteenth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments. A claim brought against a government employee in his official capacity, however, is a claim against the government itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Since Blackledge also sues the City of Hattiesburg, the Court will treat the claims against Chief Hardy Sims as claims against the City of Hattiesburg. *See Fife v. Vicksburg Healthcare, LLC*, 945 F. Supp. 2d 721, 731 (S.D. Miss. 2013) ("Plaintiff's official capacity claims against Defendant [] are redundant since her employer . . . is a party to this lawsuit."); *Tuskan v. Jackson Cnty., Miss.*, No. 1:13-cv-356-HSO, 2014 WL 3747606, at *1-2 (S.D. Miss. Jul. 29, 2014) (dismissing official capacity claims as redundant). Blackledge's claims against Chief Hardy Sims are, therefore, dismissed.

The Supreme Court has held that municipalities are deemed to be "persons" susceptible to suit under Section 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). When a Section 1983 claim is asserted against a municipality, courts must analyze the following questions separately: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). The Fifth Circuit has "stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012) (internal citations omitted); *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (citation omitted). Accordingly, this Court will determine whether Blackledge has alleged evidence of constitutional violations.

### A. Procedural Due Process

To begin, Blackledge has no cognizable Fifth Amendment claim as the Fifth Amendment due process clause "applies only to violations of constitutional rights by the United States or a federal actor," not to actions of a municipal government or its employees acting under color of state law. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Accordingly, the Court focuses only on Blackledge's due process claims arising under the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the Unites States; nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. When conducting a due process analysis, courts must first ask "whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011); *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty.").

Blackledge alleged in his Complaint that his right to procedural due process was violated when he was "required to pay for a criminal charge prior to being proven guilty and/or having the opportunity to defend [himself]." [1], p. 13. But it is now undisputed that he never paid any fine and is not guilty. So this Court will look at the actual evidence instead of the allegations. "Procedural due process is not itself an independent right, but merely a condition precedent to the deprivation of a life, liberty, or property interest." *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1037

(5th Cir. 1982). A general two-part inquiry governs procedural due process issues: first, whether a party had a property interest *of which he was deprived*; and second, if so, what process was due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 1153-1154, 71 L.Ed.2d 265 (1982) (emphasis added).

The parties do not address whether Blackledge has alleged a protected liberty or property interest for purposes of his procedural due process claims. But other courts have found that traffic ticket fines can constitute a protected property interest for purposes of a procedural due process claim. *Ware v. Lafayette City- Par. Consol. Gov't*, No. 08-0218, 2009 WL 5876275, at *7 (W.D. La. Jan. 6, 2009); *Mestayer v. City of New Orleans*, No. 19-14432, 2020 WL 3429826, at *5 (E.D. La. Jun. 23, 2020); *Contractors Against Unfair Taxation Instituted on New Yorkers v. City of New York*, No. 93-4718-KMW, 1994 WL 455553, at *4 (S.D.N.Y. Aug. 19, 1994) (finding that the plaintiffs had sufficiently alleged a "property interest" to make a procedural due process claim with respect to "the money allegedly exacted from defendants for payment of fines for traffic violations").

Even if this Court were to assume Blackledge had a protected property interest in a traffic ticket fine, however, "[i]t is not, enough . . . for Plaintiff to successfully allege the existence of a constitutionally cognizable property interest. . . . he must also allege a deprivation of that property interest, and in this case, Plaintiff cannot do so." *Temple v. Inhabitants of City of Belfast*, 30 F. Supp. 2d 60, 67 (D. Me. 1998). To be sure, Blackledge has not shown that he was ever deprived of a property interest by paying the traffic ticket or the late fee. In fact, it is undisputed that Blackledge does not owe any fine or late fee. And six weeks after Blackledge filed this suit, he ultimately received what he asked for—dismissal of the ticket without paying any fine.

Since Blackledge does not owe any fine or late fee, this Court finds that Blackledge has not been deprived of a protected property interest. And "[i]n the absence of such a showing, Plaintiff's procedural due process claims cannot go forward." *Temple*, 30 F. Supp. 2d at 67 (collecting cases). Blackledge's procedural due process claim is, therefore, dismissed because "[t]he requirements of procedural due process apply only to the *deprivation* of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (emphasis added).

Although the Court could end its analysis here, the Court will briefly explain that, regardless, the process provided to Blackledge was constitutionally adequate. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due."). The Supreme Court has noted that the question regarding "what process is due" is not answered by state law or local ordinances but by constitutional benchmarks. *Loudermill*, 470 U.S. at 541-42. In *Mathews v. Eldridge*, the Supreme Court explained "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Under *Mathews*, the Court considers the following factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335. The Supreme Court, in applying this test, "usually has held that the Constitution requires some kind of hearing before the State deprives a

person of liberty or process." *6420 Roswell Rd., Inc. v. City of Sandy Springs, Ga.*, 484 F. Supp. 3d 1321, 1333 (N.D. Ga. 2020) (citing *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

Applying the factors set forth in *Mathews*, the Court begins its analysis by first describing the procedural protections afforded to Blackledge. *See Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994); *Mathews*, 424 U.S. at 335. Blackledge received a traffic ticket in the mail notifying him that his vehicle was observed traveling at a speed of 28 miles per hour in a 15 mile-per-hour school zone. The ticket, issued on May 17, 2024, identified the options available for Blackledge to address the traffic violation. As discussed above, the ticket informed Blackledge that he could enroll in a "diversion program," contest the ticket by scheduling a hearing date online or calling the number identified on the ticket, or pay the ticket in full, which would result in the ticket appearing on Blackledge's driving record.[6] Blackledge later received a notice informing him that if he does "not pay or schedule a hearing date by 06/27/2024, a late fee of $30.00 will be added and you will lose your right to a hearing." [1-6]. Although Blackledge attempted to schedule a hearing before the June 27 deadline, he was not able to—despite calling the number listed on the traffic ticket multiple times. After not being able to schedule a hearing, Blackledge followed the instructions on the traffic ticket and arrived at the municipal court on July 8, 2024. Upon his arrival, he was approached by IntelliSafe personnel and advised them that he intended to plead "not guilty" to the traffic ticket

---

[6] Although IntelliSafe's "frequently asked questions" advised that "as the owner of the vehicle, you are responsible for this citation," Blackledge—who is a practicing attorney and former municipal court judge—has never argued that he relied on this representation. [1-7]. In fact, Blackledge submits that once he received the traffic ticket, he called to contest it because he was not driving. So it is clear from the record that Blackledge never relied on IntelliSafe's then policy that he, as the owner of the vehicle, was responsible for the traffic ticket. And it appears that IntelliSafe has modified its "frequently asked questions," and there is no longer a representation that the owner of the vehicle is responsible regardless of whether they were driving or not. Court Pay, *Frequently Asked Questions*, https://courtpayonline.com/#faq (last visited Oct. 30, 2025).

since he was not driving the vehicle. On July 22, 2024, Blackledge contacted the municipal court clerk to "check the status" of his traffic ticket. [1-2], p. 1. He followed up again on August 7, 2024. *Id.* at p. 2. Having received no response, Blackledge filed this action on August 29, 2024. But Blackledge does not argue that his request for a hearing was denied. He also admitted at oral argument that he would have been presumed innocent at a future hearing. To be sure, the same month his traffic ticket was closed in the Intellisafe system, thirty-four other people received a hearing, were presumed to be innocent, and were found not guilty because they were not driving the vehicle.

"[P]rocedural due process is simply a guarantee of fair procedure." *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 10 (1st Cir. 2010). And fair procedure requires notice and the "opportunity to be heard at a meaningful time, *prior* to the deprivation." *Remm v. Landrieu*, 418 F. Supp. 542, 544 (E.D. La. 1976) (emphasis added); *accord Mathews*, 424 U.S. at 333. Here, Blackledge received notice of the traffic ticket. He was also provided the opportunity to choose among three options to respond to the traffic ticket—"one of which included appearing in court to contest [it]." *Divine v. Securix, LLC*, No. 1:23-cv-196-HSO, 2024 WL 4245421, at *10 (S.D. Miss. Sep. 19, 2024). Not only has there been no deprivation, but he would have received a hearing before any deprivation. Viewing the *Mathew* factors, this Court cannot say that Blackledge was deprived of the minimum procedural constitutional guarantees to which he was entitled. *Mestayer*, 2020 WL 3429826, at *7.

Finally, courts evaluating administrative processes somewhat similar to the one implemented by the City of Hattiesburg have found that they provide constitutionally adequate process. *Bevis v. City of New Orleans*, 686 F.3d 277 (5th Cir. 2012) (finding New Orleans' automated traffic enforcement system and its procedure did not violate due process); *Gutenkauf v. City of*

*Tempe*, No. CV–10–02129–PHX, 2011 WL 1672065, at *4 (D. Ariz. May 4, 2011) (finding no due process violation where plaintiff received a hearing after being issued a speeding ticket from a photo radar camera); *Balaban v. City of Cleveland*, No. 1:07-cv-1366, 2010 WL 481283, at *7 (N.D. Ohio Feb. 5, 2010) (finding "the Ordinance does not violate the due process guarantees" because of "the right to a hearing and appeal, and the opportunity for the owner to identify the offending driver, if it is not the owner."); *Mendenhall v. City of Akron*, 374 F. App'x 598, 600 (6th Cir. 2010) (finding no due process violation "for speeding violations irrespective of whether the owner was, in fact, driving the vehicle when the violation was recorded," because the owner was provided notice and an opportunity to be heard); *Ware*, 2009 WL 5876275, at *6-11 ("[T]he administrative procedures provided under the Safespeed and Safelight programs provide constitutionally sufficient due process safeguards."); *Sevin v. Par. of Jefferson*, 621 F. Supp. 2d 372 (E.D. La. 2009) ("[T]he ATSE hearing procedures provide significantly more process than is constitutionally due."); *see also Liikane v. City of Edmonds*, No. C09–1573–JCC, 2010 WL 1992233, at *2 (W.D. Wash. May 17, 2010) (finding no due process claim where plaintiff received a hearing to contest the speeding ticket).

Blackledge has not been deprived of any property. Also, he was provided notice of the traffic ticket, and he has no evidence that he was denied a hearing or a trial. Blackledge's procedural due process claim is without merit.

## B. Equal Protection

Blackledge's equal protection argument arises primarily out of being threatened with a late fee before having the opportunity to contest the traffic ticket. Blackledge specifically asserts that, "in contradiction to the maxim of innocent until proven guilty; the owner is required to pay a fine

prior to the court date identified on the citation, and if late, assessed a late fee on a penalty not yet technically valid as there has been no hearing." [13], p. 19. Blackledge also asserts more generalized grievances with IntelliSafe's system, that "[b]y failing to make an actual traffic stop to positively identify the driver of the vehicles who are speeding in school zones, the Defendants are depriving the Plaintiff (and purported violators) of their right to equal protection under the law." [1], p. 14. According to Blackledge, this is in violation of the equal protection clause because, "purported violators, under the scheme, are treated differently than all other speed violators in the City because they are not being properly, or positively, identified via an actual traffic stop before being accused of a crime." *Id.* The most charitable reading of the Complaint is that Blackledge is attempting to tie the presumption of innocence into the equal protection framework. *Id.* at p. 20; [13], p. 19.[7]

"The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying to any person within its jurisdiction the equal protection of the laws." *United States v. Ramos*, 858 F. App'x 759 (5th Cir. 2021) (citation omitted). "Government conduct may give rise to an equal protection claim if it targets a suspect class, burdens a fundamental right, or treats one individual differently from others similarly situated without any rational basis for the difference." *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F4th 1117, 1149 (9th Cir. 2025) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for

---

[7] As for Blackledge's vague argument about whether he could even receive a citation under the IntelliSafe system at all, it is not anchored in his presumption of innocence argument, but rather more generalized objections to the IntelliSafe process. But it is undisputed that Blackledge does not allege in the Complaint that there was a seizure, a lack of probable cause, or any type of Fourth Amendment claim. Similarly, he raises no malicious prosecution claim. And Blackledge has not filed a motion to amend the Complaint. So the Court declines to address such arguments.

which the classification is made." *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016) (quoting *Baxstrom v. Herald*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966)). Thus, to succeed on an equal protection claim, a plaintiff must first show "that two or more classifications of similarly situated persons were treated differently. . . . Once this element is established, the court must then determine the appropriate level of scrutiny." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) (citations omitted).

### i. Similarly situated

"To determine whether persons or groups are similarly situated, [courts] inquire as to whether they 'are in all relevant respects alike.'" *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)). The Fifth Circuit has held that "[b]eing similarly situated is key." *Hines v. Quillivan*, 982 F.3d 266, 272 (5th Cir. 2020). "Because the clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection of the laws." *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 932 (5th Cir. 1988).

According to Blackledge, "the owner of the vehicle, as the purported violator, is treated differently than other drivers within city limits who are pulled over, positively identified, and issued a citation for speeding." [13], p. 19; *accord* [1], p. 17. Since the parties do not address the similarly situated element, for purposes of this analysis, the Court "will assume without deciding that it is met." *Hines*, 982 F.3d at 273; *accord Doe v. Settle*, 24 F4th 932, 943 (4th Cir. 2022) ("We can assume without deciding that Doe is similarly situated . . . because Doe's claim will fail at the next step.");

*Henry v. Shelley*, 170 F. App'x 492, 494 (9th Cir. 2006) ("[W]e assume, without deciding, that the statute treats similarly situated people differently.").

### ii. Level of scrutiny

Assuming that these two groups are similarly situated, this Court must now "determine the appropriate level of scrutiny." *Gallegos-Hernandez*, 688 F.3d at 195 (citation omitted). "Laws reviewed under the Equal Protection Clause are subject to one of three levels of scrutiny: strict scrutiny, intermediate scrutiny, or rational basis review." *De Leon v. Perry*, 975 F. Supp. 2d 632, 649-50 (W.D. Tex. 2014) (citing *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988)). "[S]trict scrutiny is appropriate only where a government classification implicates a suspect class or a fundamental right." *Wood*, 868 F.3d at 539. "Intermediate or heightened scrutiny applies to quasi-suspect, discriminatory classifications based on illegitimacy and gender." *De Leon*, 975 F. Supp. 2d at 650 (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). "In cases that do not implicate suspect classes or fundamental rights, '[t]he appropriate standard of review is whether the difference in treatment between [classes] rationally furthers a legitimate state interest.'" *Gallegos-Hernandez*, 688 F.3d at 195 (quoting *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (alterations in original)). In sum, "[t]he level of scrutiny depends on the type of classification." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 542 (4th Cir. 2013).

Blackledge argues that strict scrutiny applies because he says a fundamental right is at issue. [13], pps. 3, 28. Rather than claiming membership in a suspect class, Blackledge appears to assert, that he has a fundamental right to be "innocent until proven guilty." [1], pps. 14, 19, 20. According to Blackledge, his right to be presumed innocent was violated because he "was not afforded the

protection of being properly identified and having [his] day in court before being deemed guilty and assessed a fine." [13], pps. 7, 28. In his briefing, Blackledge's argument primarily focused on the threat of the late fee.

"A fundamental right for equal protection purposes is one that is explicitly or implicitly protected by the Constitution." *Richard v. Hinson*, 70 F.3d 415, 417 (5th Cir. 1995) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973)). To be sure, the presumption of innocence is not explicitly stated in the Constitution. *United States v. Dawson*, 563 F.2d 149, 151 (5th Cir. 1977) ("The presumption of innocence, although not articulated in the Constitution, is a basic component of our system of criminal justice.") (citing *Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976)). But some courts—like the Fifth Circuit in *Hernandez v. Beto*, 443 F.2d 634, 636-37 (5th Cir. 1971)—have found it to be implied. The City of Hattiesburg did not address Blackledge's presumption of innocence argument in its briefing. But at oral argument, the City agreed that the Fifth Circuit's decision in *Hernandez v. Beto* is binding on this Court, and that the presumption of innocence is a fundamental right that can be violated under certain circumstances.

In *Hernandez v. Beto*, the Fifth Circuit found that a criminal defendant being forced to wear prison garb at trial "infringed a fundamental right—the presumption of innocence." 443 F.2d at 636-37. The Supreme Court has long held "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Estelle*, 425 U.S. at 504-05. "To implement th[is] presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard

against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Id.* In other words, "[b]ecause of this presumption '(n)o insinuations, indications or implications suggesting guilt should be displayed before the jury, other than admissible evidence and permissible argument.'" *Dawson*, 563 F.2d at 151 (citation omitted). This presumption, however, arises out of the right to a fair trial and has therefore been narrowly applied to criminal trials in the Fifth Circuit. Further, in *Hernandez v. Beto*, there was more than just a threat. Instead, the criminal defendant was actually tried in prison garb. 443 F.2d at 636-37.

While other courts have certainly applied the right to specific pre-trial criminal matters as well, Blackledge cites to no case that has applied the presumption of innocence in a context where an equal protection violation was found. *See Jung v. City of Phila.*, No. CV 25-956, 2025 WL 1797247, at *9 (E.D. Pa. June 30, 2025) (applying rational basis review because the automated enforcement statute's rebuttable presumption that a vehicle's registered owner was the violator did not implicate any recognized right "in the civil context, let alone been found to be a 'fundamental right' in the civil context by the Supreme Court"); *Boger II*, 2025 WL 1696562, at *9 (noting city's practice of fining the first owner on the vehicle's registration for speed camera violations did "not implicate a suspect class or fundamental right"). And he certainly cites no cases that are close to this scenario. To be sure, the evidence shows Blackledge never actually intended to pay any late fee, was always going to contest the citation, and he ultimately won.

There is no implication of a fundamental right in this case. Indeed, Blackledge was never found guilty; he never had a trial; and, in fact, the charge was never filed in the court system. And the charge was closed after Blackledge insisted to the City of Hattiesburg that he was not the driver of the vehicle. So no fine or late fee is owed. Finally, at oral argument, Blackledge conceded that if

his charge had gone to trial before a municipal court judge, that the judge would have presumed he was innocent. This is supported by the thirty-four other people who were mailed a traffic ticket, claimed they were not driving, appeared before a municipal court judge—who presumed them to be innocent—and were ultimately found not guilty and had the tickets dismissed. [13-4]; [13-5].

Since there is no implication of a fundamental right, and because there is no protected class at issue, the Court must consider whether the "classification rationally further[s] a legitimate state interest." *Nordlinger*, 505 U.S. at 10. "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *DC Operating, LLC v. Paxton*, 586 F. Supp. 3d 554, 572 (W.D. Tex. 2022) (citing *Cleburne Living Ctr.*, 473 U.S. at 440). And Blackledge "concedes there is a rationally related government interests in deterring speeding in school zones." [13], p. 25. But even if he had not, for all of the reasons stated in *Mallory v. City of Hattiesburg*, 2:25-cv-10-KS-BWR (S.D. Miss. Oct. 14, 2025), there is a rational basis in protecting the safety of school children with this type of system. *See also Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016) (finding the city ordinance establishing an automated traffic enforcement system passed rational basis review). Consequently, Blackledge's equal protection claim is dismissed with prejudice.

## C. Substantive Due Process

To begin, "on its face . . . the Due Process Clause guarantees *no* substantive rights, but only (as it says) process." *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019) (quoting *United States v. Carlton*, 512 U.S. 26, 40, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994) (Scalia, J., concurring)).[8] But

---

[8] And Justice Thomas has stated that "'substantive due process' is an oxymoron that 'lack[s] any basis in the Constitution.'" *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 331, 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022) (Thomas, J., concurring); *accord United States v. Vaello Madero*, 596 U.S. 159, 169, 142 S. Ct. 1539, 212 L. Ed. 2d 496

binding precedent requires this Court to analyze whether Blackledge has a valid substantive due process claim.

The Supreme Court's test for analyzing a substantive due process claim "has two primary features." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997).

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition' . . . and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed' . . . Second, we have required in substantive-due-process cases a 'careful description' of the asserted fundamental liberty interest.

*Id.* (citations omitted).

As with his equal protection claim, Blackledge's primary complaint with the IntelliSafe system is that he was threatened with a late fee for not paying the traffic ticket before having the opportunity to contest the merits of the traffic ticket. [13], p. 8; [1], pps. 14, 19, 20. And Blackledge argues that "[t]his presumption of guilt violated [his] substantive due process rights the moment the citation was issued and mailed to [him]." [13], p. 10.

Even so, this is Blackledge's "equal protection claim recast in substantive due process terms," and it "cannot proceed." *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008);[9] *see also Willis v. Town of Marshall*, 426 F.3d 251, 266 (4th Cir. 2005) ("Because Willis's substantive

---

(2022) (Thomas, J., concurring); *Johnson v. United States*, 576 U.S. 591, 607, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) (Thomas, J., concurring); *see also McDonald v. Chicago*, 561 U.S. 742, 811, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (Thomas, J., concurring).

[9] The City of Hattiesburg also argues that this Court must apply the Supreme Court's framework in *Hudson v. United States*, 522 U.S. 93, 99-100, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997), to distinguish "between civil and criminal penalties." [11], p. 8. But *Hudson* is a double jeopardy case, not a substantive due process case. And the City of Hattiesburg fails to explain how *Hudson*, or the cases cited that rely on *Hudson*, is relevant to the instant substantive due process analysis. Nor does the City of Hattiesburg really counter Blackledge's better argument that the traffic ticket at issue is a criminal penalty, rather than a civil penalty. Nonetheless, whether the traffic ticket can be classified as criminal or civil is not outcome determinative.

due process claim thus 'fully overlaps' her Equal Protection claim, the district court properly rejected the due process claim."). As the Supreme Court has explained, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)). This is because the Supreme Court has "always been reluctant to expand the concept of substantive due process." *Glucksberg*, 521 U.S. at 720 ("[G]uideposts for responsible decision making in this unchartered area are scarce and open-ended."). Blackledge's substantive due process claim is dismissed as it is duplicative of his equal protection claim. *See Newell-Davis v. Phillips*, 551 F. Supp. 3d 648, 658 (E.D. La. 2021). Alternatively, it is dismissed for all of the same reasons set forth in the above equal protection analysis. Indeed, there is no violation of a fundamental right.

## V. IMMUNITY ARGUMENTS

Blackledge asserts official capacity claims against the three prosecutors for the City of Hattiesburg, Steven Adamson, Anna Rush, and Elizabeth Porter, because they "ha[ve] the duty and power to ensure that the rights of individuals are not trampled upon." [13], p. 22; [1], pps. 16, 19. According to Blackledge, "[t]hese prosecutors knew, or should have known, that Defendants' policy, and the method by which it is being enforced, violates an individual's due process and equal protection rights." [13], p. 22. In other words, Blackledge's argument is merely one of acquiescence, as he is not claiming the prosecutors actively did anything wrong. But instead, that the prosecutors should have somehow stopped how IntelliSafe rolled out its program. Indeed,

Blackledge conceded at oral argument that he has not alleged that the prosecutors engaged in any action that violated the Constitution. In fact, Blackledge admitted that Anna Rush and Elizabeth Porter had nothing to do with this matter at all—and that Steven Adamson's only affirmative act was sending Blackledge a letter informing him that his traffic ticket was considered closed. With no constitutional allegations remaining, Blackledge's claims against the three prosecutors for the City of Hattiesburg must fail. But out of an abundance of caution, the Court will briefly address why Adamson, Rush, and Porter would nevertheless be entitled to prosecutorial immunity.

"The Supreme Court extended absolute immunity for § 1983 claims to state prosecutors in *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)." *Singleton v. Cannizzaro*, 956 F.3d 773, 779 (5th Cir. 2020). But "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S. Ct. 2606, 125 L. Ed. 2d 209 (1993). "Instead, the Supreme Court has taken a 'functional approach' to absolute immunity that 'emphasize[s] that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question.'" *Singleton*, 956 F.3d at 779 (quoting *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)). As a result, courts distinguish between:

> (1) actions taken 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' and (2) 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'

*Singleton*, 956 F.3d at 779-80 (quoting *Buckley*, 509 U.S. at 273). Under this functional approach, prosecutors are immune from claims based on activities "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. In other words, where a prosecutor acts

"within the scope of his duties in initiating and pursuing a criminal prosecution," they are "absolutely immune from § 1983 claims for violating a 'defendant's constitutional rights.'" *Singleton*, 956 F.3d at 779 (quoting *Imbler*, 424 U.S. at 410). But "a prosecutor's 'investigative activities' are not entitled to absolute immunity." *Wearry v. Foster*, 33 F.4th 260, 266 (5th Cir. 2022); *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S. Ct. 855, 172 L. Ed. 2d 706 (2009) ("We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, . . . when the prosecutor makes statements to the press, . . . or when a prosecutor acts as a complaining witness in support of a warrant application."). Instead, "'when a prosecutor makes an investigative decision' comparable to that of a police officer—such as whether to order a search and seizure—the prosecutor is not entitled to absolute immunity," but qualified immunity. *Singleton*, 956 F.3d at 781 (quoting *Van de Kamp*, 555 U.S. at 343).

This analysis is simple because, according to Blackledge, Anna Rush and Elizabeth Porter were not even involved in the case. And Steven Adamson's minor act of sending Blackledge the letter is not an investigative decision. If anything, Adamson was closing out the judicial process. Without more, Blackledge fails to allege facts sufficient to overcome the prosecutors' absolute immunity. *See Wooten v. Roach*, 964 F.3d 395, 411 (5th Cir. 2020) ("Absent a non-conclusory allegation of how [the prosecutors] participated in ways that were investigatory, [they are] entitled to immunity.") (citing *Buckley*, 509 U.S. at 274). Blackledge's claims against the three prosecutors for the City of Hattiesburg, Steven Adamson, Anna Rush, and Elizabeth Porter, are dismissed.

## VI. CONCULSION

IT IS ORDERED AND ADJUDGED that the Amended Motion to Dismiss [10] is GRANTED. All arguments have been considered and any not specifically addressed would not

change the outcome. A separate final judgment will be entered under Rule 58 of the Federal Rules of Civil Procedure.

      This, the 31st day of October, 2025.

                        **TAYLOR B. McNEEL**
                        **UNITED STATES DISTRICT JUDGE**